## IN THE UNITED STATES DISTRCIT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| **KENNETH WAYNE JONES,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   CASE No. : 1:23-cv-00472 |
| | * |
| **ORCHID UNDERWRITERS AGENCY,** | * |
| **QBE SPECIALTY INSURANCE** | * |
| **COMPANY and MCCARON** | * |
| **INSURANCE GROUP, INC.** | * |
| | * |
| Defendants. | * |

### FIRST AMENDED COMPLAINT

COMES NOW the plaintiff, Kenneth Wayne Jones ("Plaintiff"), and hereby states the following in support of his first amended complaint against the defendants, Orchid Underwriters Agency ("Orchid"), QBE Specialty Insurance Company ("QBE"), and McCarron Insurance Group, LLC ("McCarron") (collectively, "Defendants").

### PARTIES

1. The Plaintiff is a resident of Baldwin County, Alabama, and owns the property at issue in this lawsuit located in Baldwin County, Alabama.

2. Defendant Orchid Underwriters Agency is a foreign insurance company and not an Alabama corporation and has its principal place of business located at 1201 19th Place Suite A110, Vero Beach, Florida 32960.

3. QBE Specialty Insurance Company is a North Dakota corporation with its principal place of business in the state of New York and is a wholly owned subsidiary of QBE Holdings, Inc. Defendants are companies engaged in the business of selling property insurance and doing business in Baldwin County, Alabama.

4. McCarron Insurance Group, Inc., is an Alabama corporation with its principal office and business located at 25620 Canal Rd, Orange Beach, AL 36561 which is in Baldwin County, Alabama. McCarron is a company engaged in the business of procuring and selling property insurance in Baldwin County, Alabama.

## JURISDICTION & VENUE

5. Given the addition of McCarron Insurance Group, Inc., a party that is incorporated in Alabama as well as has its principal place of business in Baldwin County, Alabama, this case is due to be remanded to Alabama state court pursuant to 28 U.S.C.A. § 1447(e).[1] Alabama state court now has jurisdiction over this matter pursuant to ALA. CODE §§ 12-11-30 because the matter in controversy exceeds the jurisdictional minimum of the court.

6. Venue is proper in Alabama state court pursuant to ALA. CODE § 6-3-7 in that the Plaintiff and Plaintiff's Property is located in Baldwin County, Alabama; the subject insurance policy was issued to residents of Baldwin County, Alabama; a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Baldwin County, Alabama; and all Defendants have done and continue to do business by agent in Baldwin County, Alabama.

## FACTUAL ALLEGATIONS

### *Orchid and QBE Insurance Claim and their Improper Actions*

7. Plaintiff purchased a policy from Defendants Orchid and QBE, policy no. OUA10016959-01 (hereinafter referred to as "the Policy"), which was in effect at the time of loss.

8. The Policy was purchased to insure Plaintiff's property and guest house located at and/or near 16320 Brigadoon Trail, Gulf Shores, AL 36542 (hereinafter referred to as the "Property").

---

[1] Although the original complaint did support removal based on diversity jurisdiction, the amended complaint now adds McCarron, a party that is located in Baldwin County, Alabama, which will eliminate this Court's diversity jurisdiction.



*Aerial Photograph of Plaintiff's main house (above) and guest house (below)*

      9.      Orchid and QBE knew Plaintiff's Property included the guest house shown above.

      10.     Orchid and QBE insured the guest house of the Property as an "other Structure" pursuant to the Policy.

      11.     Orchid and QBE knew that the guest house was covered as an "other structure" pursuant to the Policy.

      12.     Knowing these facts, Defendants and/or their agent procured and sold the Policy insuring the Property, including the guest house, to Plaintiff.

      13.     Plaintiff relied on Orchid and QBE providing insurance coverage to protect the Property, which included the guest house.

      14.     On or about September 16, 2020, Plaintiff experienced a severe named storm event known as Hurricane Sally which caused substantial damage to the Property and surrounding homes and businesses in the area. The Property's damage constitutes a covered loss under the Policy issued by Orchid and QBE.

15. Relying on the promises and representations made by the Defendants, Plaintiff filed a claim under the Defendant's Policy with the belief that the Property would be covered after the hurricane event – such as the one that damaged the Property.

16. Once the Plaintiff filed a claim, QBE's assigned an adjuster, Dan Donohue ("Donohue"), to adjust the claim.

17. As a result of Donohue's investigation and review of the Policy, Donohue found that the guest house was covered by the Policy and even issued funds specifically for the guest house.

18. Thereafter, QBE wrongfully adjusted the Plaintiff's claim and refused to issue a full and fair payment for the covered loss as was rightfully owed under the Policy.

19. QBE made numerous errors in investigating the Plaintiff's claim, as exhibited by its assigned adjuster's method of investigation of the Plaintiff's loss, all of which was designed to intentionally deny the loss incurred by Plaintiff.

20. QBE's assigned adjuster failed to fully quantify the Plaintiff's covered loss, thus demonstrating that QBE's assigned adjuster did not conduct a thorough investigation of Plaintiff's claim and/or intentionally adjusted the Plaintiff's claim improperly.

21. QBE and their assigned adjuster ignored clear and obvious damage that was sustained to the roofing system, exterior of the building and interior of the building of the Plaintiff's home caused by the hurricane, which led to the scope and cost of repairs to be undermined and underpaid.

22. QBE intentionally delayed their investigation of the Plaintiff's claim by asserting false and frivolous coverage positions during the litigation process. As one example, QBE, during litigation and never during the insurance claim process, asserted a frivolous position that the guest house of the Property is not covered by the Policy. Moreover, when QBE identified an expert to supposedly support this frivolous position, QBE's own expert disagreed with QBE's position, and even testified that the guest house is, and was, covered by the Policy. More importantly, QBE never provided this frivolous coverage position in a letter to the Plaintiff during any phase of the insurance claim process.

23. In fact, QBE specifically only named one individual to support its alleged contention that the guest house is not covered by the Policy, and that one person was Donahue. However, Donohue opined that the guest house *is* covered by the Policy.

24. To date, QBE still has not submitted any coverage position, statement or letter explaining that the guest house is not covered by the Policy to the Plaintiff.

25. QBE's improper and frivolous denial of the Plaintiff's insurance claim did not allow for adequate funds to cover the cost of repairs and therefore grossly undervalued all the damage sustained to the Property. As a result of QBE's conduct, the Plaintiff's claim was intentionally and knowingly underpaid and denied.

26. QBE's assigned adjuster acted as an authorized agent of QBE. QBE's assigned adjuster acted within the course and scope of their authority as authorized by QBE.

27. The Plaintiff relied on QBE and QBE's assigned adjuster to properly adjust the Plaintiff's claim regarding the Property and relied on the Defendants assigned adjuster to issue payment to fix such damage, which did not happen and has not been rectified to date.

28. QBE failed to perform their contractual duties to adequately compensate the Plaintiff under the terms of the Policy. Specifically, QBE refused to pay the full proceeds owed under the Policy. Due demand was made by Plaintiff for proceeds to be in an amount sufficient to cover the damaged Property. However, QBE refused to issue full and fair proceeds to cover the damage to the Property that was sustained due to Hurricane Sally.

29. All conditions precedent to recovery under the Policy had, and have, been carried out and accomplished by Plaintiff.

### *Orchid's Improper Acceptance of Premium Payments*

30. Orchid was the underwriter for the Policy that covered the damage to the Plaintiff's Property following Hurricane Sally.

31. Orchid issued a Policy application that contained $300,000.00 policy limits for "other structures", which QBE accepted, and knowingly knew it covered the guest house of the Property.

32. Orchid and QBE knew that the guest house was included in the "other structures" coverage limit, which is why the "other structures" policy limits were so excessive.

33. QBE and Orchid accepted premium payments that totaled $6,744.78 from the Plaintiff, which accounted for, at least in part, the $300,000.00 "other structure" policy limits.

34. Even after accepting and financially benefiting from Plaintiff's monthly premium payments for coverage to the Property, Orchid and QBE are intentionally misrepresenting that the

guest house was not considered an "other structure" under the Policy and that the guest house is not covered under the Policy.

35. QBE has supposedly denied coverage to the Property based on, in part, Orchid misrepresenting and not properly underwriting the guest house as a covered property under the Policy.

### *McCarron's Insurance Procurement*

36. McCarron is an insurance agent, producer and/or broker which does business in Baldwin County.

37. In 2019, the Plaintiff engaged and relied on McCarron, with a view to compensation, to provide reasonable and adequate insurance coverage for the Plaintiff's Property.

38. McCarron had actual knowledge of the Plaintiff's guest house and the specific request from the Plaintiff for the guest house to be afforded adequate insurance coverage under the Policy as an "other structure."

39. Knowing these facts, McCarron and/or McCarron's assigned agent procured the Policy for the Plaintiff, making various statements and representations to the Plaintiff that the coverage pursuant to the Policy would include the Plaintiff's guest house as a covered property under the Policy.

40. Relying on the promises and representations made by McCarron and/or McCarron's assigned agent, the Plaintiff was under a reasonable belief that the guest house was covered under the Policy as a "other structure" prior to Hurricane Sally damaging the Property on September 16, 2020.

41. Had the Plaintiff been informed that the guest house was not covered under the Policy as a "other structure" prior to Hurricane Sally damaging the Property, then the Plaintiff would have had the opportunity to exercise their best efforts to obtain proper insurance coverage elsewhere, and that is what they would have done. But given the misrepresentations that were made, and the failure by the Defendants to provide notice to the Plaintiff that the guest house was not covered under the Policy prior to Hurricane Sally, Plaintiff did not have the chance to do so.

### CAUSES OF ACTION
### COUNT I – BREACH OF CONTRACT
### *QBE*

42. Plaintiff hereby adopts the allegations set forth above as if fully re-alleged herein.

43. As set forth above, the Plaintiff entered into an insurance contract with the QBE wherein QBE agreed to pay for all repairs necessitated by damage caused by a covered loss pursuant to the terms of the Policy.

44. QBE has breached this contract and/or the Policy by, among other things, refusing to pay for the costs to repair the damage to the Property caused by Hurricane Sally and otherwise acting inconsistent with the Policy and Alabama law.

45. As a proximate result of QBEs' breaches of the Policy, the Plaintiff has been damaged and will continue to be damaged.

## COUNT II – BAD FAITH
### *QBE*

46. Plaintiff hereby adopts the allegations set forth above as if fully re-alleged herein.

47. An insurance contract existed between the Plaintiff and QBE.

48. QBE has intentionally acted in bad faith breached the above-mentioned Policy and Alabama by, among other things, refusing to pay under that Policy without any reasonable, legitimate, or arguable reason for doing so.

49. QBE admitted during the claims process that the guest house was covered by the Policy and even issued funds specifically for the guest house as an "other structure."

50. To date, QBE has not issued a single coverage letter stating that the guest house is not covered by the Policy, however, QBE has seemingly taken this frivolous position during litigation, without any reasonable, legitimate or arguable reason for doing so.

51. In support of that supposed coverage position, QBE only identified one individual by name, Donohue, to support this new and frivolous coverage position.

52. However, Donohue testified that his opinion was that the guest house was covered by the Policy. Donohue is not of the opinion that the guest house is not covered by the Policy, which is contrary to QBE's own sworn admissions made during discovery.

53. Since QBE cannot identify a single individual that has made or supports this alleged coverage position that the guest house is not covered by the Policy, it is evident that QBE has actual knowledge that this is not a legitimate or even arguable reason to deny any portion of the Plaintiff's claim.

54. QBE's intentional, willful, and illegitimate reason to fully pay the Plaintiff's claim is in bad faith, and the Plaintiff has been proximately caused to suffer damages as a result of this bad faith refusal to respond and pay its claim.

55. By asserting this frivolous position, QBE also failed to properly investigate all damage that was sustained to the Plaintiff's Property as a result of Hurricane Sally, which includes the Plaintiff's main house and guest house.

WHEREFORE, the Plaintiff demands judgment against QBE for compensatory and punitive damages in such amount as a jury in its discretion shall award together with prejudgment interest, post judgment interest, attorney's fees and costs.

## COUNT III – NEGLIGENT PROCUREMENT OF INSURANCE COVERAGE
### *McCarron*

56. Plaintiff hereby adopts the allegations set forth above as if fully re-alleged herein.

57. McCarron negligently breached their duty owed to the Plaintiff in that McCarron negligently failed to obtain and/or provide adequate insurance coverage for the Property.

58. In undertaking to procure and provide adequate insurance, with a view to compensation, on behalf of the Plaintiff, McCarron had a duty to reasonably evaluate the Plaintiff's requests, and to review available coverages and policies and to reasonably include such coverages as would protect the Plaintiff's Property from loss.

59. However, McCarron failed in their duties to procure adequate insurance to protect the Plaintiff's Property.

60. As a proximate consequence and result of the negligence of McCarron, the Plaintiff was catastrophically damaged by their failure to obtain adequate insurance for the Property.

WHEREFORE, the Plaintiff demands judgment against McCarron for compensatory and punitive damages in such amount as a jury in its discretion shall award together with prejudgment interest, post judgment interest, attorney's fees and costs.

## COUNT IV – BREACH OF CONTRACT TO PROCURE ADEQUATE INSURANCE
### *McCarron*

61. Plaintiff hereby adopts the allegations set forth above as if fully re-alleged herein.

62. On or around April 2019, McCarron promised and affirmed to the Plaintiff that they would procure and provide adequate insurance for the Plaintiff to cover the Property.

63. Although the Plaintiff fulfilled all conditions on his part, McCarron breached their agreement with the Plaintiff by failing to procure and provide adequate insurance coverage for the guest house of the Property.

64. In addition, McCarron failed to adequately inform the Plaintiff of their failure to include the guest house as a covered property under the Policy and failed to inform Plaintiff of the Defendants decision to allegedly deny the coverage requested by the Plaintiff.

65. As a proximate consequence and result of the breach of contract by McCarron, the Plaintiff was damaged.

WHEREFORE, the Plaintiff demands judgment for compensatory damages in such amount as a jury in its discretion shall award together with prejudgment interest, post judgment interest, attorney's fees and costs.

## COUNT V – MISREPRESNTATION
### *Orchid and QBE*

66. Plaintiff hereby adopts the allegations set forth above as if fully re-alleged herein.

67. Orchid and QBE knowingly accepted coverage for the guest house under the "other structures" coverage in the Policy.

68. Orchid and QBE represented to the Plaintiff and his representatives that the insurance Policy would have coverage for the guest house as an "other structure".

69. In fact, QBE admitted that the guest house was in fact covered by the Policy and even issued funds related to the damage to the guest house caused by Hurricane Sally.

70. Relying on the promises and representations made by Orchid and QBE, the Plaintiff was under a reasonable belief that there was coverage for his guest house on September 16, 2020, however those representations were not true.

71. Had the Plaintiff been informed that the Policy would not cover the guest house, then Plaintiff would have had the opportunity to exercise his best efforts to obtain proper coverage elsewhere, and that is what he would have done. But by not telling the Plaintiff that the guest house was, in fact, not covered by the Policy until nearly four years after his guest house sustained severe damage, Orchid and QBE did not even give the Plaintiff a chance to do so, causing catastrophic damage.

72. As a proximate consequence and result of relying on representations made by the Orchid and QBE, the Plaintiff was injured and damaged and continue to be injured and damaged as set forth above.

WHEREFORE, the Plaintiff demands judgement against Orchid and QBE for compensatory and punitive damages in such amount as a jury in its discretion shall award together with prejudgment interest, post-judgment interest, attorney's fees and costs.

### COUNT VI – MISREPRESENTATION
*McCarron*

73. Plaintiff hereby adopts the allegations set forth above as if fully re-alleged herein.

74. McCarron willfully made representations of material facts to the Plaintiff.

75. McCarron represented to the Plaintiff that they could and would procure insurance coverage to the guest house as requested by the Plaintiff.

76. The Plaintiff justifiably relied on McCarron's representation that the insurance Policy covered the guest house as an "other structure."

77. Relying on the promises and representations made by McCarron, the Plaintiff was under a reasonable belief that there was coverage for his guest house on September 16, 2020, however those representations were not true.

78. Had the Plaintiff been informed about the insurance carrier's denial of his coverage for the guest house, then the Plaintiff would have had the opportunity to exercise his best efforts to obtain proper coverage elsewhere, and that is what he would have done. But by not telling the Plaintiff that the guest house was not covered by Policy until after his guest house sustained severe damage, McCarron did not even give the Plaintiff a chance to do so, causing catastrophic damage.

79. As a proximate consequence and result of relying on representations made by McCarron, the Plaintiff was injured and damaged and continues to be injured and damaged as set forth above.

WHEREFORE, the Plaintiff demands judgement against McCarron for compensatory and punitive damages in such amount as a jury in its discretion shall award together with prejudgment interest, post-judgment interest, attorney's fees and costs.

### COUNT VII – UNJUST ENRICHMENT
*Orchid and QBE*

80. Plaintiff hereby adopts the allegations set forth above as if fully re-alleged herein.

81. Orchid and QBE knowingly accepted and retained a benefit from the premium payments from the Plaintiff that totaled $6,744.78 for the Policy. This premium payment was, at the very least, calculated using the $300,000.00 policy limits for the guest house under "other structures."

82. In return for this compensation, Plaintiff expected Orchid and QBE to provide proper insurance coverage to protect his Property, including the guest house as a "other structure", and to provide payment to the Plaintiff in the event the Property was damaged by a covered peril event.

83. After receiving payments from the Plaintiff, the Plaintiff relied on Orchid and QBE to afford insurance coverage to the guest house that his premium payments were for. However, following the damage caused by Hurricane Sally, Orchid and QBE now unreasonably and unjustly claim that the guest house was never covered by the Policy, which is false.

84. Orchid and QBE afforded coverage to the guest house following Hurricane Sally because they knew it was covered by the Policy, however, after a lawsuit was filed to dispute the amount of funds issued, Orchid and QBE knowingly and dishonestly claimed that the guest house was never covered by the Policy, which is unconscionable conduct.

85. As a proximate consequence and result of relying on representations made by Orchid and QBE, the Plaintiff was injured and damaged and continues to be injured and damaged as set forth above.

WHEREFORE, the Plaintiff demands judgement against Orchid and QBE for compensatory and punitive damages in such amount as a jury in its discretion shall award together with prejudgment interest, post-judgment interest, attorney's fees and costs.

## **DEMAND FOR RELIEF**

WHEREFORE, premises considered, the Plaintiff requests relief from this Honorable Court as follows:

Awarding Plaintiff all compensatory damages, special damages, punitive damages, and other damages to which it is entitled, including all attorney's fees and costs incurred in the prosecution of this action; and awarding such other, further legal, or equitable relief that this Court deems just.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury.

Respectfully submitted by:

**TOWNSEND LAW, LLC**

***/s/ Neal C Townsend***
Neal C. Townsend, Esquire
Ala. Bar No. 8348E98C
Neal@townsendlawofice.com
Andrew@townsendlawoffice.com
Fairhope, Alabama 36532
*Attorneys for Plaintiff*

**PLEASE SERVE THE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWED**:

- **Orchid Underwriters Agency**
  Service of Process Address: 2 NORTH JACKSON ST., SUITE 605
  MONTGOMERY, AL 36104

- **QBE Specialty Insurance Company**
  Service of Process Address: 2 NORTH JACKSON ST., SUITE 605
  MONTGOMERY, AL 36104

- **McCarron Insurance Group, Inc.**
  Service of Process Address: 25299 CORAL RD STE B10
  ORANGE BEACH, AL 36561